UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| J.I., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | CASE NO. C06-5674RJB <br><br> ORDER |

This matter comes before the Court on the United States' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Dkt. 20) and the Parties' Stipulation and Order Re Continuance of the Trial Date (Dkt. 24). The Court has considered the pleadings filed regarding the motions and the file herein.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2006, Plaintiff filed a complaint against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA"), alleging that he was sexually abused by members of the United States Army. Dkt. 1. Father John Murphy ("Murphy") and Father Reinard Beaver ("Beaver") were ordained Roman Catholic Priests serving as chaplains in the United States Army Chaplain Corps. Dkt. 20-8, at 3-13. According to Plaintiff, the first time he was sexually abused by Murphy was at the Catholic Church on the Fort Lewis Army Base, Washington, in 1967. Dkt. 20-2, at 26, 30. Plaintiff was in junior high at the time. *Id*. at 26.

ORDER
Page 1

Plaintiff further alleges that Murphy continued to sexually abuse Plaintiff for several years, often at Murphy's home (*Id*. at 34-6), and that Murphy made Plaintiff available to other employees of the Army, such as military aides and other chaplains, including Beaver, who also sexually abused Plaintiff. *Id.*, at 35-36.

Plaintiff's complaint alleges that Murphy and Beaver served under the control and supervision of the Army's Chaplain Corps during the alleged sexual assaults. Dkt. 1, at 4-5. Further, Plaintiff alleges that Murphy and Beaver used their positions as Army Chaplains to engage in a "pattern of sexual molestation and exploitation of children." *Id.*, at 4-5. Plaintiff alleges that the Army was at all times responsible for Murphy and Beaver and knew, or should have known, that Murphy and Beaver were sexual predators who posed a constant threat to adolescent and pre-adolescent boys. *Id.* at 2.

Plaintiff asserts four claims for relief. Dkt. 1. First, Plaintiff claims that the Army acted negligently because the Army knew or should have known that Murphy and Beaver had pedophilic tendencies. *Id.*, at 6. Also, Plaintiff asserts that the Army knew or should have known that Murphy and Beaver would continue to "exploit their status and offices within the Department of Army" and the "Department of Army negligently failed to warn the families and children" of the Chaplains' sexually abusive behavior. *Id.* Plaintiff further alleges that the Army failed to properly investigate the backgrounds of Murphy and Beaver, failed to recognize the symptoms associated with pedophilia, failed to timely adopt policies and procedures used to prevent pedophilia, and failed to take action following complaints of abuse regarding Murphy and Beaver. *Id.*, at 6-7.

Second, Plaintiff asserts a claim for negligent infliction of emotional distress. *Id.*, at 7. He alleges that the negligent acts and omissions of the Army caused him emotional distress resulting from Murphy's and Beaver's sexual abuse. *Id.*

Third, Plaintiff alleges that the Army engaged in a plan of action "to cover up and otherwise conceal" the incidents of sexual abuse. *Id.*, at 8. Plaintiff alleges that the Army denied the abuse, reassigned or transferred abusive Chaplains, coerced victims and their families, and

failed to seek out and redress victims. *Id.* Plaintiff claims that the Army's fraudulent concealment of the sexual abuse equitably estops it from asserting a defense of limitations. *Id.*

Fourth, Plaintiff alleges that Murphy and Beaver sexually assaulted Plaintiff in violation of RCW §§ 9.68A.040, .070, and .090. *Id.* Further, Plaintiff alleges that Murphy's and Beaver's violations of the statue, known as the Sexual Exploitation of Children Act, was done with the knowledge and acquiescence of the Army. *Id.* Plaintiff claims that he is thereby entitled to attorneys' fees and costs pursuant to RCW § 9.68A.130. *Id.*

The Complaint alleges that notice of these claims, as required by 28 U.S.C. § 2675, were received by the United States Army Judge Advocate General on February 28, 2006. *Id.*, at 2. The Army's response was mailed on May 18, 2006, and was received by Plaintiff on May 22, 2006. *Id.*

On January 29, 2007, the United States moved for dismissal of Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Dkt. 7-1, at 1. The United States pointed out that the alleged abuse took place in the late 1960s and early 1970s, and the notice of the claim was not filed until 2006. *Id*. The United States asserted that Plaintiff's failure to file an administrative claim within two years of the accrual of his claim pursuant to the FTCA, 28 U.S.C. § 2401(b), strips this Court of jurisdiction to hear the case. Dkt. 7-1, at 1. This Court denied the motion without prejudice because "too many factual issues were unresolved" for the Court to determine when Plaintiff's claim accrued. Dkt. 16. Parties were ordered to conduct discovery on matters solely pertaining to the issue of when Plaintiff's claim accrued: that is "when the facts of the injury and its cause" were known to the Plaintiff. *Id.* (*citing United States v. Kubrick*, 444 U.S. 111, 123 (1979)).

The parties conducted discovery on the issue of the exact time at which Plaintiff realized he was injured and the cause of his injury. The parties submit the following information relating to when Plaintiff's claim accrued.

Plaintiff acknowledges that he has remembered the sexual contact with Beaver, Murphy and other members of the Army since the events occurred. Dkt. 20-4, at 12. However, he states

ORDER
Page 3

that he "don't know if [he] felt it was abuse, if that makes any sense. . . . [He] thought it was love. [He] thought [he] was loved by a priest. [He] thought – some of it was positive . . ." Dkt. 20-4, at 13. He testified that the abuse "affected [his] entire life, any kind of sexual performance, any kind of relationship, any kind of intimacy." Dkt. 20-4, at 14. Plaintiff has been diagnosed with bipolar disorder, attention deficit disorder, and depression. Dkt. 20-5, at 4, 20, 26.

Plaintiff stated that he "might" have mentioned being sexually abused once in a marriage counseling session in the 1980s. Dkt. 20-4, at 19. Plaintiff stated that he has been to only one marriage counselor. Dkt. 20-4, at 33-34. The record contains a "Termination Summary" written by Garrett R. Long, Registered Clinical Social Worker, dated October 14, 1989. Dkt. 20-3, at 18-19. Long related that Plaintiff was attending sessions to address "sexual problems" and "marriage problems." Dkt. 20-3, at 18. This summary does not reference any allegations of childhood abuse. *Id.*

The record contains an initial evaluation by Nora L. Fairley, M.D., dated August 23, 2000. Dkt. 20-5, at 15-20. In that evaluation, Dr. Fairley notes that,

> His mood swings probably started early. He has had a number of bad things happen to him but since he does not want to kill himself, he does not want me to ask about those things. These include being molested in high school by priests, his brother being murdered, and his parents being murdered by the hospital.

Dkt. 20-5, at 15.

The record contains treatment notes of an initial consultation session with Plaintiff and Joyce Ochanef, Ph.D., dated some time in 2004. Dkt. 20-5, at 25-28. The month of the date of treatment is unreadable. *Id*., at 25. Plaintiff testified that he believed that he saw her only once. Dkt. 20-4, at 32. The treatment notes relate that Plaintiff was

> Ref [sic] by his atty, [sic] wanting assistance and support in managing feelings and [sic] rltd [sic] to recent disclosures by him to his mother and atty [sic] re sexual abuse in his teens by several priests. He outlined multiple sexual encounters in conjunction with boarding school, cross country trip as a driver, and so forth, reporting that he had only ever told a marriage counselor then recently his brother who was supportive before seeking atty [sic] in conjunction with the other victims whose news publicity was increasingly affecting him. He rep'ly [sic] complained of confused feelings (guilt, anger, depression, sadness, rage) that were interfering with sleep and "messing up [his] life."

Dkt. 20-5, at 25. Dr. Ochanef's clinical formulation states that Plaintiff "presented with a hx [sic]

ORDER
Page 4

of career successes and talent in arts, but relationship failures, emotional conflicts and spiritual issues. He questions to what degree these related to his self reported sexual abuse by several priests in his late teens, recently preoccupying him 2° [sic] to intense media coverage." Dkt. 20-5, at 26.

Plaintiff testified that after reading stories in the newspaper and seeing news reports about other victims of sex abuse by other priests "that's when it triggered it," and he sought legal counsel. Dkt. 20-4, at 35-36. Plaintiff testified that in March of 2004, he approached Mr. Kelly Clark, an attorney in Portland, regarding the alleged sex abuse. Dkt. 20-4, at 11 and 34.

Plaintiff's Response to the Motion to Dismiss included a report from John R. Conte, Ph.D. Dkt. 22. In response to the question: "what is the nature of [Plaintiff's] discovery of the connection between the alleged abuse and the harms or damages that resulted?," Dr. Conte opined that Plaintiff "did not in the past and does not now have an appreciation of the nature of the abuse he suffered at the hands of Father Murphy, does not understand all the harms which flowed from this abuse." Dkt. 22-2, at 21. Dr. Conte stated that Plaintiff "in fact does not see what Fathers Murphy and Beaver did to him as abuse. . . . It is frankly clear to me that [Plaintiff] still views Mr. Murphy as a former lover and mentor." Dkt. 22-2, at 19. Dr. Conte noted that while the characteristics of Plaintiff's bipolar illness (mania and depression) "do not make it theoretically impossible to recognize the connection between events such as abuse and harms, it does make it extremely difficult to have such awareness for long periods of time and to act on the awareness." Dkt. 22-2, at 18. He further opined that "essentially the combination of periods of depression, mania and the use of work as a defense against awareness of pain made it difficult if not impossible that he could or did maintain any such awareness for any significant period of time." Dkt. 22-2, at 18.

*PENDING MOTIONS*

Defendant renews the motion to dismiss Plaintiff's claims and argues that 1) the FTCA's statute of limitations in jurisdictional in nature, 2) this Court lacks subject matter jurisdiction because Plaintiff failed to file his claim within two years of its accrual, 3) Equitable tolling is not

ORDER
Page 5

1  applicable under the FTCA, and 4) even if equitable tolling were applicable under the FTCA, it is
2  not appropriate in this case. Dkt. 20.

3  Plaintiff responds and argues that 1) The Court has subject matter jurisdiction over
4  Plaintiff's FTCA claims, 2) compliance with the statute of limitations is not a jurisdictional
5  requirement, 2) Plaintiff fulfilled all jurisdictional requirements, 3) Plaintiff filed his FTCA claim
6  within two years of the date of accrual, 4) the psychological impact of childhood sexual abuse
7  prevents plaintiffs from realizing "injury" at the time of the abuse, 5) mental injuries can delay the
8  discovery of injury or causation for extended periods of time, 6) Defendant's conduct prevented
9  Plaintiff from recognizing the cause of his injuries, 7) requiring Plaintiff to file a claim before he is
10 able to recognize his injury is a violation of Due Process, and 8) Defendant is equitably estopped
11 from asserting a defense of limitations based upon the allegations in the complaint. Dkt. 21.

12 Defendant replies by arguing that 1) Plaintiff's deposition testimony makes clear he knew
13 he had been abused and the identity of his abusers, 2) he brought up the abuse in the 1980s during
14 a marital counseling session, on August 23, 2000 with Dr. Fairley, and in 2004 with Dr. Ochanef,
15 3) Plaintiff realized the injury alleged in the complaint - and its cause - at the moment of its
16 occurrence or, at the very latest in the early 1980s. Dkt. 23.

17 On September 12, 2007, parties filed a stipulation seeking an order from the Court striking
18 the trial date of December 10, 2007. Dkt. 24. Parties point out that thus far discovery has been
19 limited to when Plaintiff's claim accrued and no discovery has been done on liability or defenses.
20 *Id*.

## II. DISCUSSION

### A. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION STANDARD

Under Fed. R. Civ. P. 12(b)(1), a court will dismiss claims over which it lacks proper subject matter jurisdiction. Different standards apply to a Rule 12(b)(1) motion depending on the manner in which it is made. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). First, if the motion attacks the complaint on its face, the court must presume the allegations in the complaint are true and then analyze whether its exercise of jurisdiction is proper based on the facial

ORDER
Page 6

allegations of the complaint. *See id.* (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

However, if the motion makes a "factual attack" on subject matter jurisdiction, the court does not presume the factual allegation of the complaint to be true. *Id.* In a factual attack, the defendant challenges the truth of the jurisdictional facts underlying the complaint. *Id.* When considering a motion to dismiss for lack of proper subject matter jurisdiction, the court may review supplemental materials necessary to resolve jurisdictional fact issues. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

Further, where the jurisdictional question is intertwined with the merits of the case, the court will treat the motion to dismiss for lack of subject matter jurisdiction as a motion for summary judgment under Fed. R. Civ. P. 56. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such a case, the moving party should prevail on a motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

Here, the challenge is a factual attack on the complaint because the Court must decide whether Plaintiff's claim accrued within the two years before the filing of his administrative claim. Whether subject matter jurisdiction exists depends on the resolution of a factual dispute: when Plaintiff's claims accrued. *See Wolfe*, 392 F.3d at 362. Additionally, there is potential that the jurisdictional question is intertwined with the merits of the case, so the Court will treat the motion to dismiss for lack of subject matter jurisdiction as a motion for summary judgment under Fed. R. Civ. P. 56. *See Augustine*, 704 F.2d at 1077 (1983).

**B.    FEDERAL TORT CLAIMS ACT**

    *1.    Statute of Limitations*

The traditional sovereign immunity of the government to tort suits is waived under the FTCA. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA is the sole and exclusive statutory waiver of sovereign immunity of the United States for actions alleging tortious

ORDER
Page 7

conduct. *DSI Corp. v. Sec'y of Hous. & Urban Dev.*, 594 F.2d 177, 180 (9th Cir. 1979); *see also* 35A Am. Jur. 2d *Federal Tort Claims Act* § 5 (2d ed. 2007). Any waiver of that immunity must be strictly construed in favor of the United States. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33-34 (1992). If a claim does not fall squarely within the strict terms of a waiver of sovereign immunity, a district court is without subject matter jurisdiction. *See, e.g.*, *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).

The FTCA provides an express limitations period for the filing of a tort claim. 28 U.S.C. § 2401. Under the terms of the FTCA, a claimant is required to present his administrative claim to the agency within two years after the claim accrues, or the "tort claim against the United States shall be forever barred." *Id.*, at § 2401(b). The FTCA's two-year limitations period, like other substantive or procedural restrictions on FTCA suits, is a condition on the government's waiver of sovereign immunity. *United States v. Kubrick*, 444 U.S. 111, 117 (1979). Although the state of the law appears to be in flux, the most recent pronouncement from the Ninth Circuit is that the FTCA's statute of limitations is a jurisdictional requirement. *McGraw v. U.S.,* 281 F.3d 997, 1001 (9th Cir. 2002), amended by 298 F.3d 754 (9th Cir. 2002), *compar*e *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997)(holding that the FTCA's statute of limitation was not jurisdictional in nature).

### 2. *Accrual of a Claim Under the FTCA*

In claims brought under the FTCA, the liability of the United States is determined in accordance with state law, in the same manner and to the same extent as a private individual in like circumstances. 28 U.S.C. § 1346(b). As the incident which is the basis of this action occurred in Washington, the substantive law of Washington applies. *See Richards v. United States*, 369 U.S. 1, 11 (1961).

However, federal law determines when the claim accrued. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 762 (9th Cir. 1991). Under the FTCA, a cause of action accrues when the facts of the injury and its cause are known to the plaintiff. *Kubrick*, 444 U.S. at 123; *Herra-Diaz v. U.S. Dept. of Navy*, 845 F.2d 1534, 1537 (9th Cir. 1988). The plaintiff, when armed with facts,

is not excused from failure to seek advice as to whether his legal rights have been invaded. *Kubrick*, 444 U.S. at 123. Although the FTCA statute of limitations is not tolled during infancy, *see Papa v. United States*, 281 F.3d 1004, 1011 (9th Cir. 2002), "the same rebuttable presumption of equitable tolling applicable to suits against private defendants" also applies "to suits against the United States." *Irwin v. Dept. of Vetran Affairs*, 498 U.S. 89, 95-96 (1990).

Plaintiff properly points out that this case is similar to *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986) on the issue of when his claim accrued. In *Simmons*, a woman brought suit against the government under the FTCA for injuries she sustained when her Indian health service counselor wrongfully engaged her in a sexual relationship. *Id.* at 1364. The sexual relationship lasted from 1978 to 1980. *Id.* In February of 1983, Simmons learned that her counselor's misconduct was the cause of her recent psychological problems. *Id.* Simmons subsequently filed an administrative claim, more than two years after the sexual relationship ended. *Id.* The court held that, for the purposes of the FTCA's two-year statute of limitations, Simmons's cause of action did not accrue when she first had sexual intercourse, but rather accrued when she learned for the first time that the counselor's conduct caused her emotional injury. *Id.* at 1368. Although the court in *Simmons* has been criticized in subsequent cases for misapplication of Washington law, *Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006) and *Thompson v. Everett Clinic*, 71 Wn. App. 548 (1993), neither case addresses the accrual issue. *Bodin*, 462 F.3d at 486-87 (finding that the *Simmons* application of Washington law regarding the scope of employment has been criticized); *Thompson*, 71 Wn. App. at 553 (finding that the district court in *Simmons* misapplied Washington's agency law). The court's statements in *Simmons* regarding the possibility that a person who has been in a sexually abusive relationship may not realize that he or she is injured until many years after the sexual act occurred still stands as relevant and precedential law. *See Simmons*, 805 F.2d at 1368.

Like the plaintiff in *Simmons*, Plaintiff here alleges that he did not realize that he was injured by the sexual contact until well after the events occurred. Dkt. 21. The question before the Court then, is whether there are issues of fact as to when the facts of the injury and its cause

ORDER
Page 9

were known to Plaintiff. *Kubrick*, 444 U.S. at 123. The Complaint alleges that notice of these claims, as required by 28 U.S.C. § 2675, were received by the United States Army Judge Advocate General on February 28, 2006. Dkt. 1, at 2. Accordingly, in order for his filing to have been timely, the facts of the injury and its causes must have been known to Plaintiff no earlier than February 28, 2004. Defendant argues that Plaintiff admitted during his deposition testimony that he knew he had been sexually abused and exploited all his life. Dkt. 20. Defendant also points to three of Plaintiff's medical records to show that he knew before February 2004 that he was injured by the alleged abuse. *Id*. Each of these items of evidence will be examined in turn.

        a. <u>Plaintiff's Testimony</u>

Defendant points to Plaintiff's testimony that the abuse "affected [his] entire life, any kind of sexual performance, any kind of relationship, any kind of intimacy" (Dkt. 20-4, at 14) as evidence that the facts of the injury and its cause were known to Plaintiff. This testimony does not establish that Plaintiff knew that he was injured or the cause of his injury before February 2004, only that he realizes it now, as was the case in *Simmons*. Moreover, Plaintiff's situation is further complicated because of his bipolar illness. After an evaluation done in 2007, Dr. Conte, explained that,

> While it is not completely clear at this point in the evaluation, it appears that [Plaintiff] has come to understand intellectually at this point in his life that what was done to him was considered childhood sexual abuse and makes efforts to say that he was abused but his fundamental underlying view is that his relationship with Fathers Murphy and Beaver were love and (at least in regard to Father Murphy) a mentoring relationship. His report associated with much of what took place in what as a professional I would call childhood sexual abuse. This may be partly due to the extent to which he continues to this day to defend psychologically from understanding that he was abused or damaged by these events. It may also be that he simply lacks the capacity to look at the harms or damages in his own life (e.g. problems with authority) as resulting from the abuse.

Dkt. 22-2, at 20. Dr. Conte opined that Plaintiff "did not in the past and does not now have an appreciation of the nature of the abuse he suffered at the hands of Father Murphy, does not understand all the harms which flowed from this abuse." Dkt. 22-2, at 21. At a minimum, there are issues of fact as to whether Plaintiff's testimony establishes that the facts of the injury and its cause were known to the Plaintiff no earlier than February 28, 2004.

ORDER
Page 10

b. <u>Medical Evidence</u>

The first medical record, referred to by Defendant as evidence that Plaintiff was aware of the effects of the alleged abuse before 2004, is a "Termination Summary" written by Garrett R. Long, Registered Clinical Social Worker, dated October 14, 1989. Dkt. 20-3, at 18-19. Plaintiff testified in his deposition that "might" have mentioned he was sexually abused to a marriage counselor in the 1980s. Dkt. 20-4, at 19. He testified that he has seen only one marriage counselor. *Id*. at 33-34. Long related that Plaintiff was attending sessions to address "sexual problems" and "marriage problems." Dkt. 20-3, at 18. Interestingly, Long did not mention any childhood sex abuse in the report. Dkt. 20-3, at 18-19. Viewing the evidence in a light most favorable to Plaintiff, the deposition testimony that he "might" have mentioned that he was sexually abused as a child to a marriage counselor in the 1980s does not establish that he knew that he was injured by the abuse. Moreover, Plaintiff does not contend that he could not remember the events, just did not understand their effect on him, as explained above. Dkt. 21.

The second medical record is from 2000 by Dr. Fairley. Dkt. 20-5, at 15. Dr. Fairley related that Plaintiff reported he has had a "number of bad things happen to him but since he does not want to kill himself, he does not want me to ask about those things. These include being molested in high school by priests . . ." Dkt. 20-5, at 15. However, when questioned at his deposition about the sexual abuse reference in Dr. Fairley's report, Plaintiff stated that he was not referring to Murphy and Beaver. Dkt. 20-4, at 28-29. For purposes of this motion, there are issues of fact as to whether this portion of the medical record refers to the allegations against Murphy and Beaver.

The last portion of medical record that Defendant points to as evidence that Plaintiff was aware of the effects of the sexual abuse before February 2004, are the treatment notes from Dr. Ochanef. Dkt. 20-5, at 25-28. The date of the consultation is unreadable, but appears to be before April 8, 2004, because there is a later treatment note that Plaintiff called and rescheduled a session for April 8, 2004. *Id*., at 27. The treatment note indicates that Plaintiff was referred by his attorney to discuss childhood sex abuse. *Id.*, at 25. The record indicates that Plaintiff first

contacted an attorney, Mr. Clark, regarding the alleged sexual abuse in March of 2004. Dkt. 20-4, at 11 and 34. Construing the facts in Plaintiff's favor, it appears that the initial consultation with Dr. Ochanef occurred at least in March of 2004. There are, at a minimum, issues of fact as to whether this medical record establishes that the facts of the injury and its cause were known to Plaintiff before February 28, 2004.

        3.    *Conclusion on Accrual of the Claim Under the FTCA's Statute of Limitations*

There are issues of fact as to when the facts of the injury here and its cause were known to the Plaintiff. Due to the jurisdictional nature of the FTCA's statute of limitations, Defendant's motion should be denied without prejudice, pending a determination of the relevant facts. The Court need not reach the issue of whether the statue of limitations may be equitably tolled or whether Defendant should be equitably estopped from asserting a defense of limitations at this time. Plaintiff properly points out that a determination on these issues may be premature in any event because of the earlier limit on discovery in this case.

### C.    TRIAL DATE

Parties filed a stipulation to reschedule the trial. Dkt. 24. This matter is currently scheduled for trial on December 10, 2007. Dkt. 11. The Court's earlier order limited discovery to the issue of when Plaintiff's claim accrued. Parties request a continuance of the trial date so that discovery may be conducted on all remaining issues such as liability and defenses. Dkt. 24, at 2. In light of the denial of this Defendant's Motion to Dismiss, the trial date should be stricken. By September 28, 2007, Parties should submit a proposed schedule for resetting a reasonably early trial date and for resetting the other deadlines found in the Court's scheduling order (Dkt. 11). Parties should now be permitted to proceed with discovery.

### III.    ORDER

Therefore, it is hereby **ORDERED**:

- The United States' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Dkt. 20) is **DENIED WITHOUT PREJUDICE**;

- Parties' Stipulation and Order Re Continuance of the Trial Date (Dkt. 24) is

**GRANTED**.  The parties shall **SUBMIT** a proposed schedule resetting a reasonably early trial date and resetting other deadlines by **September 28, 2007**; Parties may resume discovery, if they so choose, and

- The Clerk of the Court is instructed to **STRIKE** the **TRIAL DATE** and send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 19th day of September, 2007.

/s/ Robert J. Bryan
ROBERT J. BRYAN
United States District Judge

ORDER
Page 13